UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
SAMUEL WEBER on behalf of all
similarly situated consumers

                              Plaintiff,

      -against-

EXPERIAN INFORMATION SOLUTIONS, INC.
TRANS UNION, LLC
EQUIFAX INFORMATION SERVICES, LLC
AND GOLDMAN SACHS BANK USA

                             Defendants.

---------------------------------------------------------

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1. Plaintiff Samuel Weber seeks redress for the illegal practices of Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax") and Goldman Sachs Bank ("Enhanced") in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq. (FCRA).

2. The FCRA prohibits furnishers of credit information to falsely and inaccurately report consumers' credit information to credit reporting agencies.

### *Parties*

3. Plaintiff is a citizen of the State of New Florida who resides within this District.

4. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

5. Defendants are Credit Reporting Agencies ("CRA") that engage in the business of maintaining and reporting consumer credit information.

6. Upon information and belief, Defendant Experian's principal place of business is located in Costa Mesa, California.

7. Upon information and belief, Defendant Trans Union's principal place of business is located in Chcago, Illinois.

8. Upon information and belief, Defendant Equifax' principal place of business is located in Atlanta, Georgia.

9. Defendant Goldman Sachs Bank USA is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

10. Upon information and belief, Defendant Goldman Sachs'principal place of business is located in New York, New York.

### *Jurisdiction and Venue*

11. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

12. All conditions precedent to the bringing of this action have been performed.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Samuel Weber*

14. Plaintiff is a consumer who is the victim of inaccurate reporting by all Defendants bureaus and the furnisher and has suffered particularized and concrete harm.

15. In or about April, 2021 Plaintiff set up an Apple Pay account for small charges.

16. In or about the end of June, 2021 Plaintiff received a telephone call from Defendant Goldman Sachs that he has not paid the bills for Apple Pay.

17. Plaintiff indicated that he had not received any bills.

18. Plaintiff then investigated further and determined that the bills were received in the Plaintiff junk/spam emails. He explained to all defendants that after the payment was due, Plaintiff realized that he had received the bill in his spam email.

19. It is not reasonable that one checks his or her spam email in a regular fashion as important emails should be sent to one's inbox.

20. Plaintiff disputed the Goldman Sachs account that appeared on his credit report directly with Experian, Trans Union and Equifax on July 3, 2021.

21. In the said conversations, Plaintiff informed the three credit bureaus and Goldman Sachs via telephone in detail that the late payments reflected in his reports are not accurate.

22. The representative from Goldman Sachs indicated that a dispute would be entered to remove the late payments.

23. The credit bureaus indicated that they would investigate the dispute.

24. The removal of the late payments was not effectuated.

25. As a result of the actions of all of the defendants in the investigating of the dispute and the failure to adjust the credit report so that there was no reflection of late payments, the Plaintiff has suffered concrete damages.

26. The Plaintiff has applied for a mortgage.

27. Due to the failure to remove the Goldman Sachs late payment reporting, the Plaintiff will receive $100,000 less than he wanted.

28. 15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

29. Section 1681i(a) outlines the reinvestigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

30. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

31. Defendants violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit file and then notified Experian of the said dispute.

32. Despite the dispute from the Plaintiff, Defendants have completely abdicated their obligations under federal and state law and have instead chosen to merely "parrot" whatever its customer, Goldman Sachs has chosen to say.[1]

33. Defendant Goldman Sachs has promised through its subscriber agreement or contracts to accurately update accounts but Goldman Sachs has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiff's credit reports.

34. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing *Gorman v. Experian*; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

(February 11, 2004).

35. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute, and correct any inaccuracies. Id.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; Nelson, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge] conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under Sections 727 and 524(a)(2) of the Bankruptcy Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that Citibank continued to misreport

Plaintiff's debt history even after Plaintiff initiated his dispute with Experian. Accordingly, he has stated a valid claim under the FCRA.)

36. It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

37. However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRA breached its statutory duty to notify the furnisher.[2]

38. These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

39. Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

---

[2] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

40. As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so merely showing that the furnisher did not comply with one of its duties will not establish liability.

41. If Goldman Sachs had performed a reasonable investigation of Plaintiff's dispute, Plaintiff's matter with Goldman Sachs would have been removed as GoldmanSachs had represented to the Plaintiff via telephone.

42. Inaccurate information was included in the Plaintiff's credit reports.

43. The inaccuracy was due to the Defendants' failure to follow reasonable procedures to assure maximum possible accuracy.[3]

44. The Plaintiff suffered injury.

45. The consumer's injury was caused by the inclusion of the inaccurate entry.

46. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

---

[3] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source— which is what plaintiff asserts is lacking—so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

47. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

48. Discovery of the violations brought forth herein began and occurred in the month of July, 2021 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

## CLASS ACTION ALLEGATIONS

49. When a consumer notifies a CRA that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file" the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). As part of the investigation, the CRA must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer…." 15 U.S.C. § 1681i(a)(2)(A).

50. If a consumer disputes an account that appears on his or her credit, the CRA must investigate to determine whether the account pertains to that consumer and should be part of that consumer's credit history. As part of the investigation, a CRA must notify the source of the disputed account about the consumer's dispute and provide the source with all the relevant information provided by the consumer. Alternatively, the CRA can delete the derogatory information.

51. All CRAs have long been aware of its obligations to properly investigate consumer disputes. It had the benefit of plain, unambiguous statutory language requiring a

      reasonable investigation of "the completeness or accuracy of **any item** of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

52. The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like Experian violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." Collins v. Experian Info. Sol's, Inc., 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

53. Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); Morris v. Equifax Info. Serv's, LLC, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982); Dennis v. BEH-1, LLC, 520 F.3d 1067 (9th Cir. 2008); Steed v. Equifax Info. Serv's, LLC, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

54. The Defedants' failure to investigate disputed account information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

55. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Experian's failure to comply with 15 U.S.C. § 1681i(a)(1) and (2).

56. This cause of action is brought on behalf of Plaintiff and the members of a class.

57. The class consists of all persons whom Defendants' records reflect resided in the State of New York, who disputed an account concerning Goldman Sachs with CRAs which was not properly corrected during the period beginning two years prior to the filing of this action and through the time of judgment.

58. The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Experian, Experian has represented that it receives approximately 10,000 disputes a day, amounting to millions of disputes each year. Accordingly, Plaintiff estimates that the class has hundreds or thousands of members.

59. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Experian violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it; and whether the violations were willful.

60. Plaintiff's claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theory: a dispute to Experian regarding a dispute, which Experian did not investigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2). Plaintiff received results of his disputes from Experian with standard form language. Plaintiff's claim is typical of the two-year class because he made his dispute within two years.

61. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue these claims.

62. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Experian's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Experian, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's practices.  Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

63. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## AS AND FOR A FIRST CAUSE OF ACTION

*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

**Failure to Conduct Reasonable Investigation and Maintain Reasonable Accuracy**

64. At all times mentioned in this Complaint, Experian was a "consumer reporting agency," as referred to in 15 U.S.C. § 1681a(e).

65. At all times mentioned in this Complaint, Goldman Sachs was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA.

66. Goldman Sachs is reporting inaccurate credit information concerning the Plaintiff to one or more credit bureaus as defined by 15 U.S.C. § 1681a of the FCRA.

67. Prior to the commencement of this action, Plaintiff disputed certain information about a an Goldman Sachs account on Plaintiff's consumer credit reports.

68. Plaintiff was disputing the fact that the bills were sent as junk/spam emails

69. The CRAs subsequently notified the Plaintiff that they would investigate the said dispute.

70. The CRAs' investigations did not resolve the dispute.

71. The disputed account appeared on Plaintiff's CRA consumer reports and in his file maintained by the CRAs.

72. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

73. Defendants' investigation process did not live up to the standards of Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

74. Defendants' investigation process did not live up to the standards of the Federal Trade Commission in the matter of <u>U.S. v. Performance Capital Mgmt.</u> (Bankr. C.D. Cal. Aug. 24, 2000).

75. Defendants violated the duty under 15 U.S.C. 1681i by verifying the above referenced account without obtaining any documentation in support of its contention that Plaintiff was legally responsible for the failure to receive the bills properly..

## **LIABILITY AND DAMAGES**

76. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

77. At all times mentioned in this Complaint, various employees and/or agents of Defendants were acting as agents of Defendants and therefore Defendants were liable to for the acts committed by its agents and/or employees under the doctrine of respondeat superior.

78. At all times mentioned in this Complaint, employees and/or agents of Defendants were acting jointly and in concert with Defendants, and Defendants is liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendants and its agents or employees were engaged in a common business venture and were acting jointly and in concert.

79. Plaintiff believes and asserts that he is entitled to $1,000.00 in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

80. Plaintiff believes and asserts that Defendants' actions were willful and intentional.

81. Because Defendants' acts and omissions were done willfully, Plaintiff requests punitive damages.

82. Plaintiff requests punitive damages against Defendants in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

83. For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

84. Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

85. Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

   a) Actual damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

   b) Punitive damages pursuant to 15 U.S.C. § 1681n;

   c) Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

   d) Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION
### *(New York Fair Credit Reporting Act)*

86. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

87. Defendants failed to delete information found to be inaccurate, reinserted the information without following the NY FCRA, or failed to properly investigate Plaintiff's disputes.

88. Defendants failed to promptly re-investigate and record the current status of the disputed information and failed to promptly notify the consumer of the result of their investigation, their decision on the status of the information, and his rights pursuant to this section in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(a).

89. Defendants failed to clearly note in all subsequent consumer reports that the account in

question is disputed by the consumer in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(c)(3).

90. As a result of the above violations of the N.Y. FCRA, Defedants are liable to Plaintiff for actual damages, punitive damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

e) Actual damages, punitive damages and attorney's fees pursuant to N.Y. Gen. Bus. Law § 380-m; and

f) Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
August 25, 2021

    /s/ Adam J. Fishbein
Adam J. Fishbein, P.C. (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

    /s/ Adam J. Fishbein
Adam J. Fishbein (AF-9508)