UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SAMUEL WEBER,

                Plaintiff,

            - against -

GOLDMAN SACHS BANK USA,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-4807 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Samuel Weber brings this action, on behalf of a putative class, for alleged violations of the Fair Credit Reporting Act, New York Fair Credit Reporting Act, and contract law. Presently before the Court is Defendant Goldman Sachs Bank USA's ("Goldman Sachs") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Court grants Goldman Sachs's motion to dismiss Plaintiff's Fair Credit Reporting Act claims, declines to exercise supplemental jurisdiction over the remaining State law claims, and dismisses this matter in its entirety.

# BACKGROUND[1]

## I. Factual Background

       In or about April 2021, Plaintiff, a citizen of New York, set up an Apple Pay account. (Am. Compl., Dkt. 18, ¶¶ 3, 15.) Two months later, Goldman Sachs, a New York entity, called Plaintiff and informed him that "he has not paid the bills for Apple Pay." (*Id.* ¶¶ 10, 16.) Plaintiff responded

---

[1] For the purposes of this motion, the Court accepts as true all non-conclusory factual allegations in the Amended Complaint. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) ("The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all well-pleaded factual allegations in the complaint." (citation and quotations omitted)); *Sabir v. Williams*, 52 F.4th 51, 54 (2d Cir. 2022) (same).

to Goldman Sachs that he never received notice of the bills, and that, upon investigating his email box, determined that the Apple Pay bills had ended up in his spam box. (*Id.* ¶¶ 17–18.) Goldman Sachs reported Plaintiff's late Apple Pay payments to consumer reporting agencies ("CRAs"), which published the fact of these late payments on Plaintiff's credit report. (*Id.* ¶ 24.) In July 2021, Plaintiff disputed Goldman Sachs's account of his late-payments with three CRAs—TransUnion, Equifax, and Experian Information Solutions—on the basis that Goldman Sachs's "report [was] not accurate." (*Id.* ¶¶ 24–25, 29.) The CRAs did not remove the disputed information from Plaintiff's credit report. (*Id.* ¶ 27.) Plaintiff contacted Goldman Sachs again and reiterated his view that the reports regarding the late Apple Pay payments were inaccurate. (*Id.* ¶¶ 28–29.) Goldman Sachs's call-center representative agreed with Plaintiff, advised him to pay the outstanding balance to Apple Pay, and promised that a "dispute would be entered to remove the late payments." (*Id.* ¶¶ 30–31.) Plaintiff paid the outstanding balance to Apple Pay, but neither Goldman Sachs nor the CRAs amended any of the reports. (*Id.* ¶¶ 32–33.) Sometime thereafter, Plaintiff applied for a mortgage, and learned that he would receive $100,000 less than he had requested and at a higher interest rate than he had wished. (*Id.* ¶¶ 41–42.)

## II.   Procedural History

Plaintiff brought this putative class action on August 25, 2021, and, three months later, amended his Complaint. (Dkts. 1, 18.) Plaintiff sues on behalf of "hundreds or thousands"[2] of New York residents that Goldman Sachs allegedly wronged by misstating their payment histories to CRAs. (Am. Compl., Dkt. 18, ¶¶ 71–73.) Specifically, Plaintiff alleges violations of: (a) the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i, for which he seeks statutory damages and

---

[2] The Court is unsure whether this is a typographical error and Plaintiff actually intended to allege a claim on behalf of "hundreds [of] thousands" of New York residents. (Dkt. 18, ¶ 73.) Regardless, this potential error does not affect the Court's analysis.

punitive damages in the amount of $10,000 (*Id.*, ¶¶ 94, 98); (b) the New York Fair Credit Reporting Act (*Id.* ¶¶ 101–05); and (c) a contract he and Goldman Sachs allegedly signed, and an oral contract he and Goldman Sachs—through its call-center agent—allegedly formed. (*Id.* ¶¶ 106–13.)[3] On April 26, 2022, Goldman Sachs filed the present motion to dismiss pursuant to Rule 12(b)(6), which Plaintiff opposes.[4] (Dkts. 34, 36, 37.)

## STANDARD OF REVIEW

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of [p]laintiff['s] claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citation omitted). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (ultimately citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To present a plausible claim, the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Jorgensen v. Cnty. of Suffolk*, 558 F. Supp. 3d 51, 60 (E.D.N.Y. 2021) (citing *Twombly*, 550 U.S. at 555.) (cleaned up); *see also Sulieman v. Igbara*, 599 F. Supp. 3d 113, 120 (E.D.N.Y. 2022) ("A complaint need not contain detailed factual allegations, but it must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (cleaned up)).

---

[3] Plaintiff further sued three consumer reporting agencies—TransUnion, Equifax, and Experian Information Solutions—with which he later settled. (Dkts. 24, 26, 29, 38.)

[4] Plaintiff's opposition borders on nonsensical. Plaintiff peppers the Introduction section of his motion with obscure headlines—spelled in bold, oversized letters—stating that: "Apple Card being investigated by regulators for gender bias," and "Goldman Sachs is being investigated by regulators over alleged gender discrimination involving the Apple Card." (Dkt. 37, at 4.) Plaintiff seemingly invites the Court to use this case as a vehicle to penalize Goldman Sachs for this alleged wrongdoing. (*Id.*) Tabloid-style gossip is irrelevant to this matter and Plaintiff's counsel is admonished for including it in his motion papers.

When ruling on a motion to dismiss, the Court "must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the [p]laintiff['s] favor." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (citation omitted); *see also Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022) ("A court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." (cleaned up)). Nonetheless, "[d]etermining whether a complaint [is legally sufficient] is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 147 (S.D.N.Y. 2022) (cleaned up).

## DISCUSSION

### I. Plaintiff Fails to State a Claim Under the FCRA

#### A. Legal Standard

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Sessa v. Linear Motors, LLC*, 576 F. Supp. 3d 1, 8 (S.D.N.Y. 2021) (citation omitted). "In order to protect consumers from the harm that can result when inaccurate information is disseminated into their credit reports, the FCRA prescribes specific duties on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 390 (E.D.N.Y. 2022) (citation omitted). A "furnisher" is defined by federal regulations as "an entity that furnishes information relating to

4

consumers to one or more consumer reporting agencies for inclusion in a consumer report."[5] 16 C.F.R. § 660.2. Section 1681s-2 of the FCRA[6] does not explicitly provide for a private right of actions for plaintiffs. However, "most courts to have considered the issue have concluded that consumers may pursue claims for willful or negligent noncompliance with Section 1681s-2(b) [of the FCRA]." *Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 339 (S.D.N.Y. 2004); *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 36 (1st Cir. 2010) ("We join the vast majority of courts to have considered this issue in holding that a plain reading of the FCRA's text indicates that a private cause of action exists for individuals seeking remedies for furnishers' violations of § 1681s-2(b)." (collecting cases)); *but see Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (noting that Section 1681s-2(a) "plainly restricts enforcement [under the statute] to federal and state authorities" and provides for no "private cause of action."). In relevant part, Section 1681s-2(b) provides:

> (b) **Duties of furnishers of information upon notice of dispute**
>
> (1) In general. After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
>> (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1),

---

[5] Plaintiff alleges that Goldman Sachs is a furnisher within the meaning of the statute. (*See* Am. Compl., Dkt. 18, ¶ 9.) Because the Court dismisses Plaintiff's FCRA complaint on another ground, it assumes without deciding that Goldman Sachs qualifies as a furnisher.

[6] The FCRA is codified at Title 15 of the United States Code, section 1681 *et seq.*

> for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).  Thus, to maintain a Section 1681s-2(b) claim against a furnisher, "a plaintiff must show that: (1) the furnisher received notice of a credit dispute from a CRA; and (2) the furnisher then acted in willful or negligent noncompliance with the statute."  *Zlotnick*, 583 F. Supp. 3d at 390 (cleaned up).

In addition, reasoning from the purpose and text of the FCRA, courts recognized that Section 1681s-2(b) impliedly requires a plaintiff to prove causation—namely, that the furnisher's allegedly unreasonable or deficient investigation, had it been done correctly, would have revealed some real inaccuracy that caused the harm to the plaintiff.  *See Chiang*, 595 F.3d at 29–30 (holding that a "plaintiff [must] show actual inaccuracies [in the reported information] that a furnisher's objectively reasonable investigation would have been able to discover" to prevail); *see also Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1039–40 (D. Minn. 2010) (holding that, to prevail on a Section 1681s-2(b) claim that a furnisher failed to conduct a reasonable investigation, plaintiff must show the existence of some inaccuracy in the reported information that a reasonable investigation would have exposed), *aff'd*, 413 F. App'x 925 (8th Cir. 2011).  Indeed, in the related context of FCRA claims against a CRA, the Second Circuit has held that "to prevail. . . it is necessary for a plaintiff to establish, among other things, that a credit report contains an inaccuracy."  *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (citation omitted).  Because "[t]he FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information," the Court agrees that "the same rationale supports requiring a showing of actual inaccuracy in suits against furnishers."  *See Chiang*, 595 F.3d at 37–

6

38 (emphasis in the original); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("Just as in a lawsuit against a [CRA], to prevail on a FCRA claim against a furnisher, a consumer must make a *prima facie* showing that the furnisher's report [to consumer reporting agencies] was inaccurate." (emphasis added)). "This requirement furthers the goals of the FCRA, the stated purpose of which is to prevent consumers from being *unjustly damaged* because of inaccurate or arbitrary information in a credit report." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 276 (S.D.N.Y. 2020) (cleaned up) (emphasis added).

B.   **Application**

Plaintiff fails to adequately state that the information Goldman Sachs reported was inaccurate and, therefore, that a reasonable investigation would have prevented the harm he suffered. In essence, Plaintiff argues that the legal consequences of his unawareness of the Apple Pay charges meant that his legal obligation to pay them dissipated, and that Goldman Sachs reached the wrong legal conclusion when reporting to the CRAs that Plaintiff still owed a debt to Apple Pay.[7] In this Circuit, however, "inaccuracies that turn on legal disputes are not cognizable

---

[7] To his credit, Plaintiff acknowledges that "courts [have] held that legal challenges to the validity of the contract underlying a reported debt did not amount to the factual inaccuracy required to raise a § 1681s-2(b) claim," and further agrees that "courts across the country have similarly held that furnishers were not liable under § 1681s-2(b) for continuing to report a debt over a variety of consumers' legal objections." (Plaintiff's Opposition ("Pl. Opp."), Dkt. 37, 6–7.) However, attempting to extricate himself from the rule, Plaintiff argues that "that the dispute between the parties [here] is completely factual in nature," because "[it] is a fact that if plaintiff is not made aware of the charges, he or she cannot be expected to pay the bill." (*Id.* at 8.) Plaintiff's argument is a non-sequitur. First, as explained *supra*, the Court accepts Plaintiff's version of the facts as true. Thus, any factual dispute would have had no bearing as to whether this Rule 12(b)(6) motion should be granted. Second, labeling a legal dispute factual does not make it so. Whether Goldman Sachs correctly determined that Plaintiff has a legal obligation to pay a debt is not a factual dispute—it is a legal dispute. *See Sessa*, 576 F. Supp. 3d at 12 (noting that "federal courts at both the trial and appellate levels have come to this conclusion and subsequently dismissed claims against . . . CRAs in cases wherein creditors asserted claims of inaccuracy based on purportedly incorrect legal determinations, which influenced debt obligations" (collecting cases)); *see also In re Arcimoto Inc., Sec. Litig.*, No. 21-CV-2143 (PKC), 2022 WL 17851834, at *7 (E.D.N.Y. Dec.

7

under the FCRA." *Mader*, 56 F.4th at 270. This case is comparable to *Mader*. There, the plaintiff, Mader, had taken out an $18,000 educational loan, and several years later, filed for bankruptcy. *Id.* at 266–67. The bankruptcy court discharged Mader from most of his debts, but not his student loan debt, noting that "[d]ebts for most student loans [are] not discharged." *Id.* A CRA later reported the educational loan as outstanding on Mader's credit report, and, in 2019, Mader sued a CRA under the FCRA. *Id.* The Circuit held that the alleged inaccuracy was not cognizable under the FCRA, *inter alia*, because it "hinge[d] on the resolution of an unsettled legal question" as to the meaning of certain provisions in the bankruptcy code. *Id.*

Compared to *Mader*, this case stands on even weaker ground. In *Mader*, as the Circuit observed, reasonable minds could have disagreed as to whether the bankruptcy code discharged the plaintiff's debt. *Id.* at 269–70 (noting that "[c]ourts have taken different approaches" as to the legal question at issue). Here, however, Plaintiff cites no case, statute, or doctrine supporting his novel theory that after one signs a contract for services, his obligation to perform that contract dissipates because, through inadvertence, he fails to pay the contract. *See, e.g.*, *AKF, Inc. v. W. Foot & Ankle Ctr.*, --- F. Supp. 3d ----, -----, No. 19-CV-7118 (PKC) (ST), 2022 WL 4538869, at *4 (E.D.N.Y. Sept. 28, 2022) (noting that under New York law, "a party's subjective intention or willingness to perform its [contractual] obligations is irrelevant; the issue is whether the party acted pursuant to the contract, not whether the party was willing or able to do so" (brackets omitted)) (citing *Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S. 2d 147, 155 (N.Y. App. Div. 2007), *aff'd*, 925 N.E.2d 926 (N.Y. 2010)). Regardless of whether any court would endorse Plaintiff's legal

---

22, 2022) (noting that "[l]egal labels [] reveal no new facts; instead, they are opinions or conclusions drawn from existing facts"). At base, Plaintiff argues that Goldman Sachs erred when wrongly assessing the legal consequences—namely, Plaintiff's obligation to pay—that flowed from Plaintiff's version of the facts. As nothing about that dispute is factual, the Court rejects Plaintiff's argument.

8

theory, it is currently a legal question—arguably unsettled—that Goldman Sachs was under no obligation to investigate and resolve.

Thus, the FCRA claim must be dismissed pursuant to Rule 12(b)(6).

## II. The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims

### A. Legal Standard

Under Section 1367, a Court "may decline to exercise supplemental jurisdiction over" state law claims when it "has dismissed all claims over which it has original jurisdiction [under 28 U.S.C. § 1331.]" 28 U.S.C. § 1367. Put differently, "[s]upplemental jurisdiction is a species of subject-matter jurisdiction over specified state law claims, which a federal court may (or may not) choose to exercise." *Rodriguez v. Velez-Pagan*, 341 F. Supp. 3d 203, 212 (E.D.N.Y. 2018) (cleaned up), *aff'd sub nom.*, *Rodriguez v. United States Army*, 788 F. App'x 67 (2d Cir. 2019). "Once a district court's discretion is triggered by [Section 1367(c)], it may decline to exercise supplemental jurisdiction when doing so would fail promote . . . economy, convenience, fairness, and comity." *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 445 (S.D.N.Y. 2021) (citation omitted); *see also Siyu Yang v. Ardizzone*, 540 F. Supp. 3d 372, 381 (W.D.N.Y. 2021) ("After dismissing all federal claims, the district court must reassess its jurisdiction over the case[.]" (cleaned up)), *aff'd sub nom.*, *Yang v. Eastman Sch. of Music*, 2022 WL 1040418 (2d Cir. Apr. 7, 2022). "[I]f the[] [considerations of economy, convenience, fairness, and comity] are not present[,] a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

### B. Application

Plaintiff's sole basis for jurisdiction in this matter is federal question jurisdiction under 28 U.S.C. § 1331 based on his FCRA claim. Having dismissed that claim, the Court elects not to

9

exercise supplemental jurisdiction over Plaintiff's remaining State law claims. The Court does not find that keeping Plaintiff's claim in this District would promote economy, convenience, fairness, or comity. First, the fact that the parties are in the preliminary phase of this litigation supports dismissal of the remaining State law claims. *See Gibbs*, 383 U.S. at 726–27 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Probiv v. PayCargo LLC*, No. 22-CV-2907 (HG) (JRC), 2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023) (noting that the procedural phase of the litigation—pre-discovery motion to dismiss—supported refusing to exercise supplemental jurisdiction). Furthermore, the Court notes that Goldman Sachs and Plaintiff are both domiciled in New York and the remaining claims all arise under New York law. Thus, given "that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," the Court finds that Plaintiff's "state claims [should] be dismissed without prejudice and left for resolution to state tribunals." *See Gibbs*, 383 U.S. at 726–27.

Accordingly, Plaintiff's State law claims are dismissed without prejudice to renew in State Court.

## CONCLUSION

For the foregoing reasons, the Court grants Goldman Sachs's motion in part, declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismisses the matter in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly and terminate this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 23, 2023
       Brooklyn, New York